· **COLORADO DEPARTMENT OF SOCIAL SERVICES, Plaintiff–Appellant,**

v.

**HEALTH CARE MANAGEMENT CONSULTANTS, INC., a Colorado corporation; Allison Health Care Center; Charm Acres Nursing Home; Leisure Chateau Nursing Home; Mt. Sinai Nursing Home; Regency Rehabilitation Center; Rocky Mountain Care Center; and Harriet Templer Moskovit, in her official capacity as a Hearing Officer with the Division of Hearing Officers, Colorado Department of Administration, Defendants–Appellees.**

No. 89CA1979.

Colorado Court of Appeals, Div. II.

June 6, 1991.

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wade Livingston, First Asst. Atty. Gen., Denver, for plaintiff-appellant.

Sheila H. Meer, P.C., Sheila H. Meer, Denver, for defendants-appellees.

Opinion by Judge RULAND.

Colorado Department of Social Services, plaintiff, appeals from that part of the judgment of the district court awarding defendant, Health Care Management Consultants (HCMC), amounts due and uncollected from certain patients who qualify for Medicaid. The Department also appeals the award of prejudgment interest. We affirm in part and reverse in part.

The relevant facts are not in dispute. HCMC owned and operated several nursing homes that rendered services to Medicaid patients. The Department withheld payment to HCMC for amounts which were due from individual patients for their share of the costs of providing care. The Department contended that the applicable statutes and regulations prohibited the nursing home from billing the Department for these uncollected amounts.

HCMC requested a hearing before an Administrative Law Judge (ALJ) to review, among other things, whether the Department could withhold payment for amounts HCMC was unable to collect from the patients. HCMC contended that approximately $20,000 was due. However, the ALJ awarded only $2,181, concluding that HCMC was entitled to recover only if it promptly notified the county of a patient's delinquency and the county failed to take the remedial action authorized by the Department's regulations.

Both parties sought judicial review of the ALJ's decision. The district court determined that HCMC was entitled to all of the funds requested and remanded the case to the ALJ to determine the appropriate amount. On remand, the parties stipulated that the amount of the unpaid patient contributions was $21,191. The district court

then entered judgment for this amount plus prejudgment interest.

## I

The Department contends that the trial court erred in requiring it to pay HCMC any funds which were not collectible from the patients. We agree in part.

Medicaid is a cooperative federal-state program that provides federal financial assistance to states to subsidize certain costs of medical treatment for low income individuals. Participation by a state is optional. However, once a state elects to participate, it must comply with the federal statutory scheme and the regulations promulgated by the Secretary of Health and Human Services. *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *Geriatrics, Inc. v. Colorado Department of Social Services*, 712 P.2d 1035 (Colo. App.1985).

Federal regulations require that "an agency *must* reduce its payment to an institution, for services provided an individual," by the amount of that individual's total income that remains after making the applicable deductions. *See* 42 C.F.R. §§ 435.-725, 435.733, & 435.832 (1990) (emphasis supplied). This requirement applies to state agencies and prohibits them from paying any amounts that are the responsibility of the patient.

■ The burden of collecting the patient's share of costs is imposed upon the institutional provider. *See Florence Nightingale Nursing Home v. Perales*, 782 F.2d 26 (2d Cir.1986), *cert. denied*, 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986). But, an exception exists if state law mandates the payment of all costs by the state agency. *See Seneca Nursing Home v. Secretary of Social & Rehabilitation Services*, 604 F.2d 1309 (10th Cir.1979).

Based upon § 26–4–110, C.R.S. (1989 Repl.Vol. 11B), the regulations discussed in part II of this opinion were adopted by the Department and these regulations prohibit payment by the Department for any amount due from a patient. The parties disagree on whether these regulations violate the mandate of the statute. HCMC contends that the General Assembly mandated payment of all uncollected patient funds. The Department argues that this interpretation of the statute is incorrect. We conclude that an analysis of three subsections adopted in § 26–4–110 of the Colorado Medical Assistance Act is required to resolve this issue.

As pertinent here, § 26–4–110(1)(a), C.R.S. (1989 Repl.Vol. 11B) provides that:

"The state department shall establish rules and regulations for the payment of vendors under this article ... [S]uch rules and regulations shall provide reasonable compensation to such vendors, but no vendor shall, *by this section or any other provision of this article*, be deemed to have any vested right ... to receive any payment in addition to or different from that which is currently payable on behalf of a recipient *at the time the medical benefits are provided by said vendor.*" (emphasis supplied)

Section 26–4–110(4)(a), C.R.S. (1989 Repl. Vol. 11B) further provides that:

"Any recipient receiving benefits under this article who receives any supplemental income, available for medical purposes under rules and regulations of the state department or who receives proceeds from sickness, accident, health, or casualty insurance *shall apply* such supplemental income to the cost of the benefits rendered...." (emphasis supplied)

Finally, § 26–4–110(7), C.R.S. (1989 Repl. Vol. 11B) provides that:

"Payments under this article shall be made by the state department, and the *total cost* of providing medical benefits shall be borne by the state; except that two percent of the costs of intermediate care nursing home services not provided in state institutions shall be borne by the county departments...." (emphasis supplied)

*Cf.* § 26–4–110(7), C.R.S. (1990 Cum.Supp.) (Effective July 1, 1991, two percent exception removed.).

A review of § 26–4–110(7) standing alone supports HCMC's contention. However, we are obliged to consider the entire statu-

tory scheme in order to carry out the intent of the General Assembly and to give, effect, if possible to each provision of the statute. Section 2–4–201(1)(b), C.R.S. (1980 Repl.Vol. 1B).

■ Viewed in that context, we conclude that the state's obligation in § 26–4–110(7) to provide the "total cost" of medical benefits is modified by § 26–4–110(1)(a) in which the provider is forewarned that, subject to the regulatory exception discussed in part II of this opinion, no vested right may be obtained under the Colorado Medical Assistance Act to any payment in addition to that which is payable by the Department on behalf of the patient at the time medical benefits are provided. Otherwise, the nursing home would be entitled to payments which were not due from the Department at the time care was provided.

Therefore, we hold that the statute does not authorize the full award requested by HCMC.

## II

■ The next issue remaining for resolution is whether the ALJ was correct in concluding that the Department was liable for uncollected amounts due from patients when HCMC promptly notified the county of the deficiency and the county failed to pursue the remedial action authorized by Department regulation. We conclude that the ALJ was correct.

Pursuant to the Act, the Department adopted two regulations that are pertinent here. The first provides that a nursing home is solely responsible for collecting the correct amount due from the patient for the cost of care. In this regulation, the nursing home is specifically prohibited from billing the Department for uncollected amounts. *See* Department of Social Services Regulation 2505–10, 10 Code Colo. Reg. § 8.415.22b. However, a second regulation requires the county department, upon notification by a nursing home that it is unable to collect the amount due from a patient, to contact the patient. If the county is unable to collect the amount due, it is authorized to discontinue Medicaid benefits. *See* Department of Social Services

Regulation 2505–10, 10 Code Colo.Reg. § 8.482.32.

Viewing these regulations together, and especially considering the statutory scheme which grants the Department significant rights under the Act in connection with the collection of past due accounts, we conclude that the Department could and did assume responsibility for uncollected amounts when it failed to assist the nursing home as required by the regulation.

First, § 26–4–107(1), C.R.S. (1989 Repl. Vol. 11B) grants the county, on behalf of the Department, the sole right to determine eligibility for Medicaid benefits. Section 26–4–107(3), C.R.S. (1989 Repl.Vol. 11B) provides that by signing an application, "a person assigns to the state department, *by operation of law*, all rights the applicant may have to ... payments for medical expenses from any other person...." (emphasis supplied)

No specific definition of "person" is included in the statute. Arguably, however, the general definition applies and includes an "individual, corporation ... business trust, estate, trust, limited liability company, partnership, or association or any other legal entity." Section 2–4–401(8), C.R.S. (1990 Cum.Supp.).

Finally, § 26–4–112(1), C.R.S. (1989 Repl. Vol. 11B) provides:

"Any medical assistance paid to which a recipient was not lawfully entitled shall be recoverable from the recipient or his estate by the county as a debt due the state...."

We therefore conclude that, if, as here, a nursing home notifies the county that a patient has not paid amounts due under § 26–4–110(4)(a), and the county takes no remedial action as authorized by the regulation, the Department then assumes responsibility to the nursing home for the uncollected amounts. Otherwise, the nursing home has no viable remedy.

## III

■ The final issue for resolution is the Department's contention that an award of

prejudgment interest was improper under § 24-4-106(4), C.R.S. (1988 Repl.Vol. 10A) of the Administrative Procedure Act. The Department argues that this proceeding is not an action for breach of contract and, thus, an award of interest is not warranted. We reject this contention.

The pertinent regulation, Department of Social Services Regulation 2505-10, 10 Code Colo.Reg. § 8.420, provides:

"In order to receive vendor payments from the State Department ... a nursing home must initially and annually thereafter submit Form Med-11A, which serves as the ... provider's *contractual agreement* with the ... Department...." (emphasis supplied)

We view the Department as having failed to honor a contractual commitment authorized by the statute. We therefore conclude that an award of prejudgment interest was authorized as an element of damage. *See Lanes v. State Auditor's Office,* 797 P.2d 764 (Colo.App.1990). And, contrary to the Department's contention, it was unnecessary for HCMC to plead the specific regulation relied upon in a judicial review proceeding in order to obtain an interest award.

That part of the judgment awarding HCMC uncollected amounts due from patients after the county was notified of the delinquency is affirmed, as well as the award of prejudgment interest on those amounts. That part of the judgment awarding additional amounts from patients is reversed, and the cause is remanded for entry of an amended judgment consistent with the views expressed in this opinion.

SMITH and JONES, JJ., concur.