Charles T. GUTIERREZ and Charles R. Larson, Plaintiffs–Appellees,

v.

Estella D. BUSSEY, Defendant–Appellant.

No. 91CA0330.

Colorado Court of Appeals, Div. III.

April 23, 1992.

Rehearing Denied May 28, 1992.

Certiorari Denied Oct. 13, 1992.

James S. Bertagnolli, Colorado Springs, for plaintiffs-appellees.

Deisch, Marion and Breslau, P.C., Michael B. Marion, Gregory K. Falls, Denver, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Estella D. Bussey, appeals from a judgment entered in favor of plaintiffs, Charles T. Gutierrez and Charles R. Larson, on their claim for damages arising from injuries suffered in an automobile accident. We affirm in part, reverse in part, and remand for further proceedings.

The following facts are not in dispute. On January 17, 1988, Bussey was driving southbound on Colorado Interstate Highway 25, when her car was struck from behind by a vehicle driven by James G. Ibbotson. The collision occurred when Bussey attempted to enter the east lane without observing Ibbotson's oncoming vehicle in that lane.

As a result of this collision, Bussey's vehicle crossed the median into the northbound lanes of traffic and collided with the left front of the automobile driven by Gutierrez. Neither Gutierrez nor his passenger, Larson, were wearing their seat belts at the time. Both suffered significant injuries.

Gutierrez and Larson commenced a negligence action against both Bussey and Ibbotson. However, their claims against Ibbotson were settled prior to trial, and Ibbotson was dismissed as a defendant in exchange for payments of $30,000 to Gutierrez and $30,000 to Larson. Ibbotson was then designated as the statutory nonparty having fault.

Trial commenced against Bussey. The jury returned a special verdict in favor of both Gutierrez and Larson. The jury apportioned negligence for the injuries to Gutierrez allocating 90 per cent to Bussey, and 10 per cent to Gutierrez. The negligence for Larson's injuries was allocated 100 per cent to Bussey. In each verdict, the jury found that Ibbotson was not negligent. In calculating the amount of damages to be awarded, the jury determined that failure to use a safety belt caused 10 per cent of Gutierrez' injuries and 4 per cent of Larson's injuries.

I

■ Relying upon *United States Fidelity & Guaranty Co. v. Salida Gas Service*

*Co.,* 793 P.2d 602 (Colo.App.1989), Bussey first contends that the trial court erred in failing to reduce the verdict for Gutierrez and Larson in the amount paid to each by the non-party, Ibbotson. Relying upon *Wong v. Sharp,* 734 F.Supp. 943 (D.Colo. 1990), Gutierrez and Larson contend that the trial court's ruling was correct. We agree with Bussey.

*Salida Gas* involved a claim by an insurance carrier, predicated upon its subrogation rights, to recover for damages to a residence caused by a propane gas explosion. A remodeling contractor had moved the propane tank, and a plumbing company had reconnected the device to the residence prior to the explosion.

Both the contractor and the plumbing company were named as defendants, but the carrier accepted an offer of judgment from the plumbing company prior to trial. The plumbing company was then designated as a non-party having fault for purposes of the trial. However, the jury returned a verdict which determined that the non-party plumbing company was not negligent.

In reaching its conclusion that the settlement proceeds of a non-party must be deducted from the verdict, a panel of this court in *Salida Gas* relied upon § 13–21–111.6, C.R.S. (1987 Repl.Vol. 6A). As pertinent here, that statute provides:

> In any action by any person ... to recover damages for a tort resulting in death or injury to person or property, the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person ... has been ... indemnified or compensated for his loss by any other person ... in relation to the ... damage ... sustained....

*Wong v. Sharp, supra,* addressed a fact situation in which one of the named defendants in a negligence action also reached a settlement with the plaintiff prior to trial. This defendant was then designated as a non-party having fault for purposes of the trial. Unlike *Salida Gas,* however, the jury returned a verdict assessing 60 per cent fault to the non-party.

In concluding that the verdict should be reduced only by the percentage of fault attributed to the non-party, the United States District Court relied upon a 1986 amendment to § 13–50.5–105, C.R.S. (1987 Repl.Vol. 6A) of the Uniform Contribution Among Tortfeasors Act. As pertinent here, that statute provides:

> (1) When a release ... is given in good faith to one of two or more persons liable in tort for the same injury ... (a) It does not discharge any of the other tortfeasors ... but it reduces the aggregate claim against the others to the extent of any degree or percentage of fault or negligence attributable by the finder of fact, pursuant to section 13–21–111(2) or (3) or section 13–21–111.5, to the tortfeasor to whom the release or covenant is given....

Contrary to the contention of Gutierrez and Larson, we do not view the statutory analysis in *Wong* as applicable here.

Section 13–21–111.6 and § 13–50.5–105 must be reconciled, if possible, so as to give effect to each. *See Cooley v. Big Horn Harvestore Systems, Inc.,* 813 P.2d 736 (Colo.1991); *Colorado Department of Social Services v. Health Care Management Consultants, Inc.,* 813 P.2d 829 (Colo.App. 1991).

In reconciling the purpose and function of each statute, we conclude that § 13–50.5–105 applies when a percentage of negligence has been attributed by the fact finder to the non-party as in *Wong v. Sharp.* *See Herrera v. Gene's Towing,* 827 P.2d 619 (Colo.App.1992).

Absent circumstances not present here, if the fact finder attributes no fault to the non-party as in *Salida Gas,* then § 13–21–111.6 controls and the settlement proceeds are deducted from the jury's award. *See* § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A); *Landsberg v. Hutsell,* 837 P.2d 205 (Colo. App.1992) (1986 statutory amendments were intended to limit a defendant's liability to the percentage of his own negligence); *see also Fenton v. Fibreboard Corp.,* 827 P.2d 564 (Colo.App.1991) (*cert. granted,* April 13, 1992) (trial court need

not deduct settlement proceeds that may not be paid). By reconciling the statutes in this manner, Gutierrez and Larson recover the full amount of their damages while Bussey is liable only for her pro-rata share of fault.

Based upon the foregoing, we conclude that the trial court erred in not reducing the verdict by the amount of the non-party settlement paid to Gutierrez and to Larson.

## II

Bussey next argues that the trial court erred when it denied her motion for a new trial based upon what she asserts are inconsistent verdicts. We perceive no error.

Specifically, Bussey argues that the verdicts were inconsistent because even though 10 per cent of the negligence was allocated to Gutierrez for the accident, the jury did not consider this negligence in calculating Larson's damages. In computing Gutierrez' damages, however, the jury did factor in 10 per cent of the negligence it attributed to Gutierrez. Bussey maintains that there was no evidentiary basis to justify the determination that Gutierrez' negligence was not a cause of Larson's injuries and damages.

In further support of her argument, Bussey points to other facts which she interprets as reflecting the jury's confusion. On the Larson verdict form, the jury originally charged Gutierrez with 10 per cent of the negligence, but then scratched out the 1, leaving 0 per cent. Also, Bussey notes that the jury found 10 per cent of Gutierrez' pain and suffering to be caused by failure to wear a safety belt, but it found only 4 per cent of Larson's pain and suffering to be caused by this omission.

■ Jury verdicts will not be reversed for inconsistency if a review of the record reveals any basis for the verdicts entered. Thus, an appellate court has a duty to attempt to reconcile the jury's answers to special verdicts if it is at all possible. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo. 1981); *see also Consolidated Hardwoods, Inc. v. Alexander Concrete Construction, Inc.,* 811 P.2d 440 (Colo.App.1991); *Lonar-*

*do v. Litvak Meat Co.,* 676 P.2d 1229 (Colo. App.1983).

■ Applying these principles here, we conclude that the jury's answers to the special verdicts are reconcilable. If the evidence and the jury instructions are considered together, the jury could have determined that 10 per cent of the injuries suffered by Gutierrez resulted from his failure to wear his safety belt and that this failure also constituted his negligence. For example, one jury instruction stated:

> Defendant Estella D. Bussey denies she was negligent and denies the nature and extent of the damages claimed by the plaintiffs; and as affirmative defenses claims the accident was caused by the plaintiffs' negligence, and that the plaintiffs have failed to mitigate their damages because of the plaintiffs' failure to use their seat belts....

Because this instruction does not indicate that failure to wear a seat belt is not the type of negligence referred to, it was possible for the jury to conclude that Gutierrez' negligence in driving the vehicle was his failure to wear a safety belt.

Moreover, there is evidence in the record supporting the jury's finding that failure to wear a safety belt caused 10 per cent of Gutierrez' injuries but only 4 per cent of Larson's injuries. Specifically, the record shows that the driver's side of Gutierrez' vehicle sustained substantial damage as compared to the passenger's side of the vehicle. Accordingly, the jury could have concluded that Gutierrez suffered greater injuries than Larson and, as a result, could have determined that a larger percentage of Gutierrez' injuries was caused by his failure to wear a safety belt. Therefore, since the jury verdicts may be resolved on this basis, we conclude that the court did not err in denying Bussey's motion. *See City of Aurora v. Loveless, supra; Knittle v. Miller,* 709 P.2d 32 (Colo.App.1985).

## III

■ Bussey further argues that the trial court erred when it awarded Gutierrez

and Larson service of process fees for non-party defendant Ibbotson. We agree.

Relying upon *Shultz v. Linden-Alimak, Inc.*, 734 P.2d 146 (Colo.App.1986), Bussey argues that since Gutierrez and Larson received a settlement from Ibbotson, they were not "prevailing parties" and that, therefore, they were not entitled to reimbursement for service of process fees to a non-party defendant. Even though we agree with Bussey's conclusion, we disagree with her reasoning and determine that her reliance on *Shultz* is misplaced.

Here, Gutierrez and Larson settled with Ibbotson prior to trial. Under *International Society for Krishna Consciousness, Inc. v. Colorado State Fair & Industrial Exposition Commission*, 673 P.2d 368 (Colo.1983), a "prevailing party" is considered one who receives a favorable settlement. Hence, we conclude that Gutierrez and Larson were prevailing parties against Ibbotson.

However, Bussey was not a party to the settlement agreement. Simply because Gutierrez and Larson were successful in reaching a separate settlement with Ibbotson, this event does not entitle them to reimbursement from Bussey for service of process fees incurred to serve Ibbotson. As a result, we conclude that the trial court erred in assessing these costs against Bussey.

## IV

▮ Bussey next contends that the trial court erred in awarding witness and service of process fees to Gutierrez and to Larson for witnesses who were not called to testify at trial. We remand for a redetermination of the proper fees to be awarded.

Pursuant to § 13–16–122(1)(e) and (i), C.R.S. (1987 Repl.Vol. 6A), a prevailing party is entitled to costs associated with witness and service of process fees. Further, the costs for witnesses subpoenaed, though not called, may be taxed against a losing party, unless the latter shows that they were not subpoenaed in good faith, but rather for the purposes of oppression.

*Kinderman v. Hersch*, 53 Colo. 561, 129 P. 228 (1912).

However, under § 13–16–112, C.R.S. (1987 Repl.Vol. 6A):

> In no case ... shall the fees of more than four witnesses be taxed against the party against whom judgment is given for costs, unless the court certifies ... that more than four witnesses were really necessary....

Here, there is no showing that the witnesses were not subpoenaed in good faith. However, there is no finding by the trial court whether more than four witnesses were "really necessary." Hence, we must remand the case to the trial court for determination of that issue. *Weber v. Wallace*, 789 P.2d 427 (Colo.App.1989).

## V

▮ Last, Bussey contends that the trial court erred in calculating the amount of pre-judgment interest awarded to Gutierrez and to Larson. We agree that the amount awarded for pre-judgment interest is incorrect and, therefore, remand for a redetermination.

Here, in determining the amount of pre-judgment interest awarded to Gutierrez and to Larson, the trial court included interest on the amount received from the settlement with Ibbotson. However, in *McKown-Katy v. Rego Co.*, 776 P.2d 1130 (Colo.App.1989), *rev'd in part on other grounds*, 801 P.2d 536 (Colo.1990), a panel of this court determined that amounts received in a settlement must be deducted before adding the statutory interest. The panel explained that by deducting this amount, a double award of interest is avoided. *See also Martinez v. Jesik*, 703 P.2d 638 (Colo.App.1985).

The judgment is affirmed in all respects except as to the court's ruling on a setoff for the damages awarded to Gutierrez and to Larson for the settlement proceeds received from Ibbotson, the court's award of service of process fees on Ibbotson, the court's award of witness subpoena fees, and the calculation of interest due on the damage award. As to these issues, the

cause is remanded to the trial court for further proceedings consistent, with the views expressed in this opinion.

METZGER and JONES, JJ., concur.